THE STATE OF OHIO, APPELLEE, v. HAWK, APPELLANT.█

[Cite as State v. Hawk (1977), 55 Ohio App. 2d 231.]

(No. 77AP-168—Decided November 3, 1977.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Alan C. Travis,* for appellee.

*Mr. Vaughn Parrish Hawk,* for himself.

WHITESIDE, J. This is a delayed appeal by defendant from a judgment and sentence of the Franklin County Court of Common Pleas following defendant's plea of guilty to the lesser included offense of murder, this court having previously granted a motion for leave to appeal. Defendant was originally indicted upon charges of aggravated murder with specifications, attempted murder, and aggravated burglary, with a *nolle prosequi* being entered upon the other charges upon defendant's plea of guilty to the lesser offense of murder.

In support of his appeal, defendant raises three assignments of error, as follows:

"I. The trial court erred as a matter of law and to

the prejudice of defendant/appellant by failing to advise the maximum consequences of and the rights waived by the plea of guilty to the offense of murder, such being required by Rule 11(C)(2), Ohio Rules of Criminal Procedure and concepts of due process of law, Amendments V, XIV, United States Constitution.

"II. The trial court erred as a matter of law and to the prejudice of defendant/appellant by failing to ascertain in any manner that he possessed criminal intent which is an essential element of the offense pleaded to and as is required by Rule 11(C)(2), Ohio Rules of Criminal Procedure and concepts of due process of law, Amendments V, XIV, United States Constitution.

"III. The prosecution, in event of invalidation of a plea of guilty to a lesser included offense and/or a plea attended by dismissal of other charges at the state's behest, may neither revive the previously dismissed charges nor reinstitute prosecution of the greater offense; such is a clear transgression of the due process and double jeopardy mandates, Amendments V, XIV, United States Constitution."

By the first two assignments of error, defendant contends that the trial court failed to comply with Crim. R. 11(C) in accepting the guilty plea.

The entire dialogue between the trial court and defendant in attempted compliance with Crim. R. 11 is set forth at pages 3 and 4 of the transcript of proceedings, as follows:

"The Court: All right. Please rise, Mr. Hawk. What is your present age?

"The defendant: 56, sir.

"The Court: How much schooling have you completed?

"The Defendant: Eleventh grade.

"The Court: Now, the Court has before it an entry of guilty plea to the stipulated lesser included offense of murder, as included in Count 1 of the indictment, which bears a penalty of an indefinite term of 15 years to life in imprisonment, and a fine of not more than $15,000, a

non-probationary offense. That is signed by Vaughn Hawk.

"For the record, is this your signature?

"The Defendant: It is, sir.

"The Court: And, have you discussed this fully with your attorneys, Mr. Scott and Mr. Tyack?

"The Defendant: I have.

"The Court: Do you realize that by a plea of this nature you both waive your right to a Jury trial, a right to confront witnesses against you, the right to compel witnesses to appear in your behalf, and the requirements of the State to prove you guilty beyond a reasonable doubt?

"The Defendant: Yes, sir.

"The Court: Do you further realize that you are pleading guilty to an offense which, as I have previously indicated is non-probationary, carries an indefinite sentence of 15 years to life imprisonment, and a fine of not more than $15,000? Are you fully aware of that?

"The Defendant: Yes, sir.

"The Court: Do you also realize that if the Court accepts this plea you place yourself at the mercy of this Court, and that the Court may proceed with judgment and sentence against you?

"The Defendant: Yes, sir.

"The Court: Now, I will inquire for the record, are you guilty of the lesser included offense of murder as contained in Count 1 of the indictment?

"(Conference at Counsel table.)

"The Defendant: Yes, sir.

"The Court: Did you get that on the record?

"The Reporter: Yes, sir.

"The Court: Very well, you may be seated."

Crim. R. 11(C)(2) provides, as follows:

"In felony cases the court may refuse to accept a plea of guilty or a plea of no contest and shall not accept such plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and

of the maximum penalty involved, and, if applicable, that he is not eligible for probation.

"(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence."

From the dialogue between defendant and the trial court quoted in full above, it is quite apparent that the trial court did not make inquiries to determine whether defendant entered his plea of guilty to the lesser included offense of murder "with understanding of the nature of the charge" and that the trial court did not make inquiry as to whether defendant understood that the state was required to prove his guilt at a trial "at which he cannot be compelled to testify against himself." In *State* v. *Caudill* (1976), 48 Ohio St. 2d 342, the Ohio Supreme Court expessly held in the syllabus:

"1. In accepting a written plea of no contest to a felony charge, the trial court must adhere scrupulously to the provisions of Crim. R. 11(C)(2).

"2. Adherence to the provisions of Crim. R. 11(C)(2) required an oral dialogue between the trial court and the defendant which enables the court to determine fully the defendant's understanding of the consequences of his plea of guilty or no contest.

"3. The requirements of Crim. R. 11(C)(2) are not satisfied by a written statement by the defendant or by representations of his counsel."

More recently, the Supreme Court in *State* v. *Stewart* (1977), 51 Ohio St. 2d 86, modified the first, but not the second and third, paragraphs of the syllabus of *Caudill*, stating in the syllabus of *Stewart*:

"Where an individual is indicted on a charge of aggravated murder, with specifications thereto, and the trial court accepts a plea of guilty to the lesser included offense of murder (R. C. 2903.02) without personally advising the defendant that he is ineligible for probation, such omission does not constitute prejudicial error, and there is substantial compliance with the provisions of

Crim. R. 11. (Paragraph one of the syllabus in State v. Caudill, 48 Ohio St. 2d 342, modified.)"

The only modification made in the syllabus of Caudill by Stewart was that the failure of the trial court to advise the defendant that he is ineligible for probation does not constitute prejudicial error where there is otherwise compliance with Crim. R. 11. With respect to the omissions of compliance with Crim. R. 11 herein (defendant's understanding of the nature of the charge and his understanding of his right not to be be compelled to testify against himself), Caudill remains unmodified by Stewart. It is improper for this court to extend Stewart so as to further modify the syllabus of Caudill. Justice Celebrezze in the decision in Stewart, at 93, noted that "[t]his court finds that the trial court did inform the defendant of his constitutional rights, which were duly waived, and of various consequences of the plea," and that "* * * the absence of a ritualistic incantation of an admonishment which is not constitutionally guaranteed does not establish grounds for vacating the plea."

That a guilty plea must be made "with understanding of the nature of the charge" and such constitutes a constitutional due process requirement is established by Henderson v. Morgan (1976), 426 U. S. 637. Not even the written plea form signed by the defendant (which pursuant to the unmodified third paragraph of the syllabus of Caudill cannot be a substitute for compliance with Crim. R. 11), sets forth the nature of the charge to which defendant entered a plea of guilty. During the explanation of the plea bargain by counsel, pursuant to Crim. R. 11 (F), the trial court did note that "the present proposed offense of murder is a purposeful killing." However, this was not directed at defendant, nor was any inquiry made as to his understanding. Nor did the trial court make any express determination that defendant entered his plea with an understanding of the nature of the charge. As stated by Justice Corrigan in State v. Stone (1975), 43 Ohio St. 2d 163, at page 167:

"It should be noted that Crim. R. 11, effective July

1, 1973, and similar to Fed. R. Crim. P. 11, remedies the problems inherent in a subjective judgment by the trial court as to whether a defendant has intelligently and voluntarily waived his constitutional rights and ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made."

Unfortunately, in this case, there is not an adequate record on review because the trial court only partially complied with Crim. R. 11.

Similarly, the right not to be compelled to testify against himself is constitutionally guaranteed by Section 10, Article I, Ohio Constitution, and the Fourteenth Amendment read in conjunction with the Fifth Amendment to the United States Constitution.

Although a cogent argument can be made in support of the position taken by the dissenting judges in *Caudill*, we are still bound by the syllabus of *Caudill* with respect to failures of the trial court to comply with Crim. R. 11 in advising the defendant and determining his understanding of constitutional rights incident to the entering of a guilty plea, *Stewart* having modified *Caudill* only with respect to admonishments which are not constitutionally guaranteed. Any further modification of *Caudill* must be made by the Supreme Court, not this court. Accordingly, we feel compelled to sustain the first two assignments of error.

The third assignment of error raising a constitutional issue not properly before the court at this time, seeking in effect a declaratory judgment as to the rights of the defendant, must be overruled.

However, as noted in our decision rendered herein on May 12, 1977, sustaining the motion for leave to appeal, the reversal of the judgment herein upon the guilty plea necessarily returns this case to the status that it was prior to the acceptance of the guilty plea, leaving all charges of the indictment pending and undetermined.

For the foregoing reasons, the first two assignments of error are sustained, the third assignment of error is

overruled, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this decision.

*Judgment reversed and cause remanded.*

McCormac, J., concurs.
Reilly, J., dissents.

Reilly, J., dissenting. I must respectfully dissent from the majority in this case. This court has, of course, followed *State* v. *Caudill* (1976), 48 Ohio St. 2d 342, in which the defendant pled no contest to aggravated murder, using a signed written statement which included matters required by Criminal Rule 11(C)(2). In *Caudill*, the trial court asked the defendant if he had read everything in the statement but did not personally inform the defendant of his rights. The Supreme Court held that the requirements of Criminal Rule 11(C)(2) were not satisfied by a written statement by defendant or by representations of his counsel. As noted above, the Supreme Court stated that Criminal Rule 11(C)(2) requires an oral dialogue between the court and defendant, which enables the court to determine fully the defendant's understanding of the nature and consequences of his plea. Subsequently, July 13, 1977, the Supreme Court decided *State* v. *Stewart* (1977), 51 Ohio St. 2d 86, in which the syllabus is quoted in the majority decision. The court also wrote, in *Stewart,* at page 93, as follows:

"This court finds that the trial court did inform the defendant of his constitutional rights, which were duly waived, and of various consequences of the plea. More importantly, the plea was voluntarily made, with the knowledge and understanding by the defendant that he had been promised neither 'a lighter sentence, or probation, or any other form of leniency.'

"Finally, although it can validly be argued that the trial court should adhere scrupulously to the provisions of Crim. R. 11(C)(2) (*State* v. *Caudill* (1976), 48 Ohio St. 2d 342), there must be some showing of prejudicial effect before a guilty plea may be vacated. See Crim. R.

52(A). This court is of the opinion that the appellant has not demonstrated that he was in any way prejudiced by the oversight of the trial court. See *Kelleher* v. *Henderson* (C. A. 2, 1976), 531 F. 2d 78, where it was held that knowledge of maximum and minimum sentences is not constitutionally required; the test is whether the plea would otherwise have been made. See, also, *Bell* v. *Estelle* (C. A. 5, 1975), 525 F. 2d 656. In the instant case, the factual circumstances indicated a guilty plea to a lesser offense was the wiser course to follow, and the absence of a ritualistic incantation of an admonishment which is not constitutionally guaranteed does not establish grounds for vacating the plea.

"The trial court substantially complied with the requirements in Crim. R. 11, and the failure to personally advise appellant that in entering a plea of guilty to murder he would not be eligible for probation does not rise to the status of prejudicial error."

The record shows that the following summation was presented to the trial court by the state during the acceptance of the guilty plea in this case. The appellant was dating one Fay Sammons. The murder victim was her mother, May Copley. Appellant and Fay Sammons were quarreling during September 1975, and he suspected she was involved with another man. Apparently, there were attempts at reconciliation, but on Friday, December 19, 1975, appellant told Fay Sammons that he had been looking for her with a gun, and that he would have killed her if he had found her. Appellant apparently attempted to see her again on Saturday, but she avoided him. Monday, December 22, 1975, appellant telephoned her at 6 a. m. and requested that she return a ring he gave her. She agreed, but said she did not want to see him again. Appellant called Fay Sammons several other times during that day, the final conversation taking place about 4 p. m. and lasting approximately thirty minutes. She apparently reiterated her position that the affair was over and expressed fear of him because he had a gun.

About ten minutes later, appellant walked into the victim's house, carrying a gun. Fay Sammons, her son,

May Copley, and a neighbor were present in the house at the time. The following was presented to the trial court concerning the offenses:

"Approximately five to ten minutes after she's finished talking to him, he came through the door of her house, their house or her house, located at 3031, I believe, Riverpark Road, and he had a gun.

"In the house at the time was a neighbor who is a lady approximately 80 years of age, Mrs. Sammons' mother, May Copley, who was visiting at the time, and Mrs. Sammons' young son. When he came through the door, walked in the living room, pointed the gun at Mrs. Sammons and said, 'I am going to kill you, but I want you to see these bullets first.' Opened the .38 revolver and spun the cylinder around and at that time Mrs. Copley, the mother of Mrs. Sammons, said to the Defendant, 'Oh, Vaughn, she was just kidding,' referring to statements that had been made on the telephone, and he turned—the Defendant turned to Mrs. Copley and says, 'And after I finish—' something to the effect you're next.

"He slapped the cylinder of the gun closed; he fired a shot at Mrs. Sammons; apparently, Mrs. Sammons ducked, and at that time—that time she got up and ran. Her son was standing in the doorway behind the Defendant. She ran to the cellar and the son ran to his bedroom. She told him to go hide or whatever, and Mrs. Sammons ran to the cellar of her house, apparently hiding in the closet.

"The neighbor, Mrs. Fulton, ran out the back door. Mrs. Copley attempted to run out the front door. During that time she was shot twice in the back and was found in the driveway, at the base of the driveway near the garage, with two bullet holes in her back, one piercing—coming very close to the heart, and eventually, apparently, it struck the pulmonary artery which was the cause of her death.

"The Defendant, after firing the shots at Mrs. Copley, then kicked the door in which Loren was in and said, 'You might as well come out. I am going to kill the young boy.'

"Loren, who is the 11 year old, came out of the bedroom and said, 'Oh, Vaughn, please don't do that.' Mr.

240

Hawk said, 'Oh, honey, I wouldn't hurt you,' and let the young lad go out the front door, and then he went downstairs into the basement and looked for Mrs. Sammons, who he did not find.

"After a short period of going through the basement, he went back up the stairs and got in the automobile and left. He went to a neighborhood bar, Roger's Bar. There, when he walked in the bar he made—Mrs. Hummel, actually she is the manager, would say that he came into the bar and she noticed nothing unusual about him at that time. He ordered a double-double Canadian Club and he drank it straight, tried to call his son. He called his friend, business associate, Max Sammons. Max came over to talk to him. He had another double-double, and at that time—this point he was becoming irrational. He had a gun in his pocket, and it began falling out."

Finally, near the close of the hearing, the transcript reads as follows:

"The Court: Very well. As you well know, the basis must appear on the record. I would also assume, Mr. Todaro, that since a stipulated lesser included offense is proposed, that the specifications as included in Count 1—it is your motion to dismiss that specification, is that correct?

"Mr. Todaro: Yes, Your Honor, that is correct.

"The Court: Very well.

"Based on the indication by Counsel for both the State and for the—or by the attorneys for the Defendant, the Court will accept a plea to the lesser included offense of murder, dismissing the specifications as included in Count 1 of the indictment.

"Upon recommendation of the Prosecuting Attorney an order of *nolle prosequi* will be entered as to Count 2, 3, and 4 of the indictment.

"This being a non-probationary offense, is there any reason why the Court should not proceed with the imposition of sentence in this case?"

In my judgment, considered in its totality, the record shows that the trial court complied with the requirements in Criminal Rule 11, and whatever omissions occurred did not involve prejudicial error in the context of this case,

as set forth in *State* v. *Stewart, supra.* Accordingly, I would overrule the first two assignments of error and affirm the judgment of the trial court.